# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| **Ildar Niyazov**, <br>             *Petitioner*, <br><br>     **v.** <br><br> **MICHAEL ROSE**, in his official capacity as Acting Philadelphia Field Office Director, United States Immigration and Customs Enforcement;"**J.L. JAMISON**, in his official capacity as Warden of the Federal Detention Center Philadelphia; **DAVID VENTURELLA**, in his official capacity as Acting Director of Immigration and Customs Enforcement; **MARKWAYNE MULLIN**, in his official capacity as Secretary of the Department of Homeland Security; **TODD BLANCHE**, Attorney General of the United States; and the **U.S. Department of Homeland Security**, <br>            *Respondents*. | **Civ. No. 25-6404** |

## MEMORANDUM

**Costello, J.**                                                                                    **June 5, 2026**

Petitioner Ildar Niyazov ("Niyazov") is a native of Uzbekistan who entered the United States in 2022.  On November 7, 2023, the Department of Homeland Security ("DHS") detained Niyazov and placed him in removal proceedings.  Niyazov was detained under 8 U.S.C. § 1225(b)(1), a provision of the Immigration and Nationality Act ("INA") which generally does not permit release on bond.  While detained at the Federal Detention Center in Philadelphia, Pennsylvania (the "FDC"), Niyazov filed a Petition for Writ of Habeas Corpus under 28 U.S.C.

§ 2241, arguing that his prolonged detention without a bond hearing violates his Fifth Amendment Due Process rights. The Government opposed the Petition.[1] The Court finds that Niyazov's nearly 31-month detention without any review or opportunity for bond has become unreasonable. Accordingly, the Court will grant the Petition and order that Niyazov be provided a prompt bond hearing.

## I.    FACTUAL BACKGROUND

Niyazov and his family entered the United States in 2022. ECF No. 1 ¶ 10; ECF No. 6 at 2. Immigration authorities did not detain him at that point, opting instead to parole him into the United States. ECF No. 6 at 2. Subsequently, on November 7, 2023, DHS officers detained Niyazov and served him with a notice to appear before an immigration judge. *Id.*

Niyazov filed an application for asylum, withholding of removal, and relief under the Convention against Torture. ECF No. 1 ¶ 12; ECF No. 6 at 3. On May 29, 2024, the immigration judge denied his applications for relief, sustained the charge, and ordered him to be removed to Uzbekistan. ECF No. 1 ¶ 14.

Niyazov appealed this decision, and the Board of Immigration Appeals ("BIA") denied his appeal on October 31, 2024. *Id.* ¶ 15. He then filed a petition for review and a motion to stay removal in the United States Court of Appeals for the Third Circuit. *Id.* The Third Circuit granted the motion to stay, and Niyazov's petition for review remains pending. *Id.*

At the time he filed this habeas petition, Niyazov was detained at the FDC. *Id.* ¶ 2. Within this facility, ICE detainees are separated from the general criminal population in a

---

[1]    Under Federal Rule of Civil Procedure 25(d), public officers who succeed their predecessors in office are automatically substituted as parties. Accordingly, Michael Rose has been substituted for Brian McShane; David Venturella has been substituted for Todd Lyons; Markwayne Mullin has been substituted for Kristi Noem; and Todd Blanche has been substituted for Pamela Bondi.

housing unit known as "3-North."  ECF No. 6-1, ¶ 6.  Detainees in this unit are permitted to freely move around 3-North between the hours of 6:30 a.m. and 9:30 p.m.  *Id.* ¶ 7. They have access to common recreational areas, computers with email access, and an exercise facility.  *Id.* ICE detainees are permitted to have social and lawyer visits and have access to public phones, as well as unmonitored legal phone lines.  *Id.* ¶ 8.

## II.    LEGAL STANDARD

A writ of habeas corpus is available "to every individual detained within the United States."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. CONST. art. I, § 9, cl. 2).  "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and the traditional function of the writ is to secure release from illegal custody."  *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A district court may grant a writ of habeas corpus if a petitioner is detained "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  This includes a noncitizen's challenges to immigration detention.  *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Demore v. Kim*, 538 U.S. 510, 523 (2003) ("[T]he Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings." (citation and quotations omitted)).

## III.    DISCUSSION

Niyazov does not dispute that he is detained under 8 U.S.C. § 1225(b)(1).  ECF No. 1 ¶ 19; ECF No. 6 at 2.  Individuals detained under this provision are subject to mandatory detention pending the disposition of their removal proceedings.  8 U.S.C. § 1225(b)(2)(A).  They are generally not afforded an opportunity for a bond hearing and "may be released only 'for urgent humanitarian reasons or significant public benefit.'"  *Kashranov v. Jamison*, 25cv5555, 2025 WL 3188399, at *1 (E.D. Pa. Nov. 14, 2025) (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 288

(2018)).  The Government argues that because § 1225 lacks a bond mechanism, Niyazov is not entitled to a bond hearing regardless of the length of his detention.

The Government is correct that there is no statutory language in § 1225(b) that authorizes the Court to order Niyazov's release or a bond hearing.  However, that is not the end of the inquiry.  Niyazov argues that his continued detention has become so unreasonably prolonged that it violates his Fifth Amendment due process rights.  ECF No. 1 ¶ 20.  Thus, the question presented here is whether Niyazov can challenge § 1225(b) as applied to him based on the length of his detention.  If the answer is yes, the Court must then determine whether a violation of due process has occurred.

### A.    The Constitutional Right to a Bond Hearing under § 1225(b)(1)

The Fifth Amendment's Due Process Clause provides that: "No person shall be . . . deprived of life, liberty, or property, without due process of law[.]"  U.S. CONST. Amend. V.  This protection "applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."  *Zadvydas*, 533 U.S. at 693.

Neither the United States Supreme Court nor the Court of Appeals for the Third Circuit has addressed whether noncitizens detained under § 1225(b) have a due process right to release or a bond hearing if their detention becomes unreasonable.  However, in a case involving another INA provision that mandated detention for certain noncitizens, the Third Circuit held that such detainees have a due process right to challenge their detention.  *German Santos v. Warden Pike Cty. Corr. Facility*, 965 F.3d 203, 206-07 (3d Cir. 2020).  *German Santos* involved 8 U.S.C. § 1226(c), which applies to noncitizens who have committed certain crimes.  *Id.* at 206.  Like § 1225(b), the text of § 1226(c) does not include language providing for release on bond.

4

8 U.S.C. § 1226(c)(4). Nonetheless, the Third Circuit held that German Santos had a due process right to a bond hearing because his 21-month detention pursuant to § 1226(c) had become unreasonable. *German Santos*, 965 F.3d at 210 (citing *Borbot v. Warden Hudson Cty. Corr. Facility*, 906 F.3d 274, 278 (3d Cir. 2018); *Guerrero-Sanchez v. Warden York Cty. Prison*, 905 F.3d 208, 222 n.11 (3d Cir. 2018)).

Applying the reasoning in *German Santos* to mandatory detention under § 1225(b), district courts in this Circuit have similarly found that noncitizens detained pursuant to § 1225(b) have a due process right to a bond hearing if it is determined that the duration of their detention has become unreasonable. *See*, *e.g.*, *C.B. v. Oddo*, No. 25-cv-263, 2025 WL 2977870, at *5 (W.D. Pa. Oct. 22, 2025) (finding that court could award habeas relief if petitioner's detention without a bond hearing became so unduly prolonged that it rendered § 1225(b) unconstitutional as applied to him); *A.L. v. Oddo*, 761 F. Supp. 3d 822, 825-26 (W.D. Pa. 2025) (finding that noncitizen paroled into the United States had a due process right to a bond hearing once his detention became unreasonable); *Nunez v. Oddo*, No. 25-cv-143J, 2025 WL 2443437, at *1 (W.D. Pa. Aug. 25, 2025) (finding that petitioner's continued detention without a bond hearing under either § 1225(b) or § 1226(c) violated his due process rights); *Pierre v. Doll*, 350 F. Supp. 3d 327, 332 (M.D. Pa. 2018) (agreeing with the "weight of authority" that noncitizens detained pursuant to § 1225(b) have a due process right to an individualized bond consideration once it is determined that their detention has become unreasonable).

This Court agrees with the reasoning of these cases and finds that Niyazov has the right under the Due Process Clause to challenge the length of his detention. When a statute fails to provide a mechanism to protect a person against arbitrary and indefinite imprisonment, the

Constitution and courts must step in to provide a remedy. *See German Santos*, 965 F.3d at 213; *A.L.*, 761 F. Supp. at 826.

**B.     The *German Santos* Framework**

Having found that Niyazov may challenge the length of his detention, the Court must next determine whether his detention has become unreasonable. To determine the reasonableness of continued detention under § 1225(b), courts in this Circuit have repeatedly applied the analytical framework utilized by the Third Circuit in *German Santos*. *See C.B.*, 2025 WL 2977870, at *6; *Nunez*, 2025 WL 2443437, at *3; *Akhmadjanov v. Oddo*, No. 25-35, 2025 WL 660663, at *4 (W.D. Pa. Feb. 28, 2025); *Dioubate v. Lowe*, No. 26-cv-648, 2026 WL 1166166, at *5 (M.D. Pa. April 29, 2026) (collecting cases). This Court will do the same.

Under *German Santos*, the Court must consider: 1) the duration of detention; 2) whether the detention is likely to continue; 3) the reasons for the delay, such as a detainee's request for continuances; and 4) whether the alien's conditions of confinement are meaningfully different from criminal punishment. 965 F.3d at 211. The first factor—duration—is the most important. *Id.* Here, these factors weigh mainly in favor of finding that Niyazov's detention has become unreasonable.

First, Niyazov has been detained since November 7, 2023, a duration of almost 31 months. The length of his detention exceeds that which courts have found to be unreasonable. *See*, *e.g.*, *Grigoryan v. Jamison*, No. 25-1389, 2025 WL 1257693, at *3 (E.D. Pa. Apr. 30, 2025) (finding that seventeen months is unreasonable) (collecting cases). The cases the Government cites to refute this point are distinguishable. In each of those cases, the duration of detention was shorter and other factors weighed against the petitioners, such as multiple delays caused by the petitioners or a prior finding that the petitioner presented a risk to the community. *See Espinosa-*

*Almonte v. Sabol*, No. 12-cv-2514, 2013 WL 3894861, at *1 (M.D. Pa. July 26, 2013) (finding that 22-month detention with multiple petitioner-requested continuances was not unreasonable); *Hernandez v. Wolf*, No. 20-cv-12315, 2021 WL 406463, at *3-4 (D.N.J. Feb. 5, 2021) (holding that 20-month detention remained reasonable because petitioner presented a risk to the community as determined in prior bond hearing).  Similarly, *Crooks v. Lowe*, No. 18-cv-47, 2018 WL 6649945, at *2 (M.D. Pa. Dec. 19, 2018), involved an 18-month detention and was decided before *German Santos* established the four-factor standard, rendering the generalized finding that the case proceeded at a reasonable pace inapplicable.  Niyazov's nearly 31-month detention without significant delays on his part or a finding that he poses a risk to the community weighs in favor of finding that his continued detention has become unreasonable.

Second, Niyazov's detention is likely to continue.  The Government is correct that the duration of Niyazov's continued detention depends on the future actions of the Third Circuit.  So far, Niyazov's appeal has been pending for over 18 months, and it is unclear when it will be decided.  It could be soon.  That does not mean that this factor weighs against Niyazov.  On the contrary, a pending appeal supports Niyazov's position that his detention has become unreasonable because there is no definite end in sight.  *See German Santos*, 965 F.3d at 212 (finding second factor "strongly supports a finding of unreasonableness" where petitioner had pending appeal); *Michelin v. Warden Moshannon Valley Corr. Ctr*, 169 F.4th 418, 434 (3d Cir. 2026) (finding petitioner's detention was likely to continue because of his appeal to the Fourth Circuit).

Under the third factor, a court considers "the reasons for the delay, such as a detainee's request for continuances," and must "ask whether either party made careless or bad-faith 'errors in the proceedings that cause[d] unnecessary delay.'"  *German Santos*, 965 F.3d at 211 (internal

citation omitted).  There is no evidence of careless or bad faith errors by either side here.

Although Niyazov appealed, any delay caused by his exercise of his rights does not count against

him.  *Id.* at 211 (internal citation omitted) (noting courts do not "hold an alien's good-faith

challenge to his removal against him, even if his appeals or applications for relief have drawn out

the proceedings").  As a result, this factor is neutral.

The fourth factor requires the Court to consider whether Niyazov's conditions of

confinement are "meaningfully different" from criminal punishment.  *Id*.  Niyazov argues that

his detention at the FDC—a federal facility primarily used for criminal incarceration—is

indistinguishable from criminal punishment.  ECF No. 1 ¶ 24.  The Government disagrees.  In

support, the Government submitted a declaration from a DOJ attorney explaining that

immigration detainees are housed in a separate unit and are provided various amenities that are

not available to criminal detainees, such as freedom of movement, recreational opportunities, and

unmonitored legal phone lines.  ECF No. 6-1.  In response, Niyazov cites decisions from courts

in this District finding that these exact conditions did not materially differ from criminal

punishment.  *See*, *e.g.*, *Centeno-Martinez v. Jamison*, No. 25-cv-3593, 2025 WL 3157711, at *2

(E.D. Pa. Nov. 12, 2025); *Grigoryan*, 2025 WL 1257693, at *4-5.

The Court need not resolve this dispute as it does not affect the outcome of this Petition.

Even if this factor weighed against Niyazov, the other *German Santos* factors weigh mainly in

his favor.  Confinement for nearly 31 months without any opportunity for review of that

detention when it appears that the detention will continue until some indeterminate time, weighs

strongly in Niyazov's favor.  Balancing the *German Santos* factors, the Court finds that

Niyazov's continued detention has become unreasonable.  However, the Court will not order his

release.  Instead, consistent with the approach taken by other courts in this Circuit that have decided similar cases, the Court will order that Niyazov be provided a prompt bond hearing.

**IV.     CONCLUSION**

The *German Santos* framework applies to Niyazov's detention under § 1225(b)(1). Because his detention has lasted nearly 31 months and is likely to continue for an indeterminate time, his ongoing detention without a bond hearing is unreasonable.  Accordingly, the Court will grant his Petition and order an individualized bond hearing.

An appropriate Order follows.

**BY THE COURT:**

_____

MARY KAY COSTELLO, J.